Lee Horner for the appellant, and Chris Barsky for the appellees. Would you like to reserve some time, Mr. Horner? I would. Five minutes, I think, would be ample, if the court please. Go ahead. Well, as we look at the answer, as we point out in the reply, we agree on a number of things. We are stuck on a couple, though. And that is, I think the big thing is whether one can embezzle one's own property. Well, normally you can't. That would just be breach of contract. You sell mortgage property. That's that. But in California, the joker in the deck is the Penal Code 538, which I believe we've pointed to the court sufficiently that it's a crime to do that. Now, the parties that agree, as you know, that the inventory would be maintained at $150,000. Let me ask you a question. I'm sort of jumping to the conclusion here. Okay. An argument was made in the first go-round. And remember, I was on that panel. Yes, sir. Okay. An argument was made. This was akin to something like sales out of trust and, you know, mortgage and inventory. Right. Judge Taylor, who was not one given to hyperbole, said that was frivolous. I think you're making a similar argument here, and I'm trying to get what the distinction is in your mind between that which we thought had nothing to do with mortgage and inventory and what you claim to be a quasi-criminal problem, number one. And number two, how that possibly gives anybody, even if you were right about that, where does that give anybody a private right of action? Excellent point. I had misstated the record originally, Judge Lafferty, saying it was a floor plan. Well, a floor plan is where you sell a car and you pay them off. That's the classic example. Classic example. This was not. This was a private loan. I'm not sure I agree with how it was set up, but it was set up. We're going to give you the money. You've got to promise not to sell more than 100 of the fleet down to less than 150. We have a UCC1 mortgage on it. And then several years down the road, you're going to pay us all back. Well, the point is the enterprise went out of business, obviously. They failed. They sold the inventory without accounting for it properly, and there's a dispute. Did you turn over $90,000 or $60,000? But the point is they did not turn over $150,000. Now, it's not a floor plan, but it is mortgage inventory. So that was absolutely my mistake. But here's the difference between – thank you for the clarification, but here's the difference that I'm not understanding. Clearly there's a covenant, and if you breach a covenant, you breach the covenant. It's a contract problem. It's not an embezzlement problem. It's not a larceny problem. So bridge, for me, the difference between the floor plan, which you all agree this thing was not, and something that's actionable on a fraud theory in everyday run-of-the-mill, no offense, inventory UCC agreement. I mean, with a covenant. But the only thing, the result of the breach of the covenant is it's a breach of the covenant. Except in California, and the Penal Code 538 says that was a fraud. How does that relate? I mean, my goodness gracious, how does a penal code have anything to do with the UCC-1? Well, the UCC-1 perfects the lien. Yeah, I understand that. And there's no doubt that we've got a loan, a mortgage, and it's secured by inventory. Well, I wouldn't call it a mortgage. I mean, you're getting a little imprecise here. You've got a lien. Well, a security interest. No, that's unquestionably right. Under UCC, right. Unquestionably right. So then, can one sell property subject to a security interest in California without permission of the lender? That's the rub. Oh, no, no. I'm sorry. Go ahead. I'm going to ask you this. Yes, sir. Embezzlement in 523A-4 is a federal term, right? Why does state law come into the definition of this federal statutory term? Well, California morphs it all together, larceny, embezzlement, whatever they call it, theft. But in the bankruptcy code, of course, we don't have 523 something to do with theft. We have embezzlement. No, we have larceny, too. Well, A-6, of course. So it's not like Congress wasn't thinking here, right? It's there. That's the next point. What I'm saying is embezzlement has the same definition in all 50 states and the territories. California has its definition of embezzlement. Why does the California definition in the criminal code come into defining this term in the federal law, which by the Constitution is supposed to be uniform? Excellent point. I think the bigger question there, as you bring up, is, well, what was it embezzled exactly? Since we know you can't embezzle your own property, then, Warner, are you crazy or what? No, I'm not crazy. They embezzled the security interest of the lender. That's what they did. Right. But let's assume that you're right under California law. Are you right under the federal law? Why should we follow the California definition when we're interpreting the federal law? Do you have a case saying you can embezzle your own property within the meaning of 523-A-4? I do not. And not to pile on, but the statute that you're citing under California law is larceny, right? It's not embezzlement. Well, they call it— Well, Congress thought they were two real different things. Yeah. They mixed it all together like 50 years ago. But it's not larceny because larceny is where you obtain property you don't have a right to. Whereas embezzlement, you already were entrusted with it. And that's the rub here. They were entrusted with mortgage security interest property, and they sold it, and they ought not to have. Well, they weren't entrusted. It was their property, and they gave a security interest in it. Right. That's a little different. Well, then the security interest goes away along with the property goes out the door. Well, sure. But that doesn't make it a trust arrangement, right? Well, we're not alleging trust. We're saying security interest, Your Honor. Okay. You're alleging an embezzlement of the security interest is what you're telling us. Yes. Right. All right. I'm down to nine minutes. If there's any other questions, I'll reserve the rest. Okay. Thank you. Okay. Mr. Barsky, go ahead, please. Yeah, thank you. You know, I think this case is really stretched on. I mean, I've heard the arguments on embezzlement. I think the Court will recall that the BAP remanded this case and said that collateral estoppel didn't apply. The bankruptcy court was fairly generous in giving them an attempt to amend their pleading, where they then added the embezzlement claim. But the majority of their complaint really just mirrored the original complaint, which was the collateral estoppel claim. The embezzlement claim was rightfully dismissed. I mean, I don't understand how somebody can embezzle. Sorry, there was an echo there. I don't understand how somebody can embezzle their own property, and certainly there's no facts to even suggest that they embezzled their property. But after the case was remanded on the BAP's first ruling and there was an amended complaint, Minister Horner and the plaintiff had six months to conduct discovery. Nothing was done. We did a supplemental disclosure statement. I really didn't feel that their amended complaint was very specific or satisfied the standards of 523A2. Sorry, we have a little bit of an echo. Could whoever else is on the Zoom please make sure your microphone is muted? Go ahead, Mr. Varsky. Yeah, sorry, I hope that's not me. But, you know, after the six-month period, there was really nothing done. We did a supplemental disclosure. I thought that Minister Horner and the plaintiff might try and refine their fraud allegations maybe through a supplemental disclosure statement or something more specific, but nothing was done. All there was was we produced the life insurance policies, which was part of their A2 claim, and that left the whole inventory problem, which there was no facts to support their allegation. It was just a bare allegation. So we brought the motion for summary judgment. I think the judge was right to hold that, you know, if there's no consideration exchanged at the time of the inventory surrender, there's no allegation under 523A2. So, you know, in filing the motion for summary judgment and even on this appeal, we have all these new claims coming in, whether it's floor plan financing, which has been reversed or, you know, now I think there's actually a conversion claim that was implied in the appeal, which was denied on the motion to amend because it didn't relate back. So this is a case going on 10 years. I mean, the original loan goes back to 2013. The bankruptcy was filed in, I believe, 2018. So this was stretched out, I think, as long as the court could possibly give it, you know, the legs for the plaintiff to plead a claim, and nothing's been pled properly. So I don't see any issue in affirming the bankruptcy court's decision. And I think my brief is pretty succinct, but I just don't see what issue can be tried before the court because no facts have actually been presented to me to defend. It's just bare allegations, and that's where we stand today. So I'm happy to rest on my pleadings, but if there's any specific questions, I don't intend to just keep talking if I don't think it's helpful for the court. Well, let me just confirming a couple things, although I think I agree with you that there's an awful lot, from the appellant's perspective, there's sort of a lot in the A4 bucket, if you will, and we'll address that with him. But I don't, and I'll ask Mr. Warner to confirm, this is not an appeal from the A2 judgment, and it's not an appeal from the A6 determination that was two way up. This is just about A4, right, on appeal. Okay. That was for Mr. Barsky. It was first for Mr. Barsky. That's just to focus your argument, Mr. Barsky. There's nothing here other than the A4 issue. Are you asking me substantively, in my opinion, or whether he actually pled it? Well, I mean, is there a difference between those two? Do you want to argue for Mr. Horniger that he actually? We're asking what's before us on appeal. We think it's only the 523A4. Do you agree with that? Well, he did, I guess, the third portion of his brief, is he said that the dismissal of the fraud claim was an error. I read that as more as a regurgitation of the lateral estoppel claim. Okay. Fair enough. And I think substantively, I think the beef of the appeal would be the A4 bucket. All right. I mean, I ask because Mr. Horniger takes a fairly broad view of A4, I believe, and you may not agree with it, but he does talk about conversion, and I think his theory is that somehow ties into A4, and he talks about fraud in a way that I think he believes may tie into A4. But it all comes out of A4, is my understanding. And certainly, if he has a different understanding, he can tell me, and if you do, you can tell me, too. But I thought this was really just about A4 at the end of the day. Well, I won't disagree with you, but I think that he speaks a while back, and I kind of echo the court's sentiments on A4, too. So, okay. Thank you very much, Mr. Barsky. Back to you, Mr. Horner. Thank you. You're right. The case turns on A4. I don't think there's any doubt about that. The other thing that I wanted to point out is the federal rule, Civil Procedure 54C, which is imported here under 7054A, that says that the court has to give you whatever relief you're entitled to, whether it's pled or not. The court was critical of our pleading at the beginning, and it obviously had some things to be desired. But I think that we've placed in the record sufficient facts to make a case for A4 investment of the security interest, of the secured inventory, and that animates, I suggest, the penal code, which says you're not supposed to do that in California. Any other questions from the panel? Thank you. Thank you very much. Thank you. The matter is submitted.
judges: Faris, Lafferty, and Spraker